IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

MATTHEW DUSKIN,

           Petitioner,

     v.

JEFF PREMO,

           Respondent.

Case No. 2:11-CV-00105-SU

FINDINGS AND RECOMMENDATION

Matthew Duskin
14670 SW Glenbrook Road
Beaverton, OR 97007

           Petitioner, *Pro Se*

Ellen F. Rosenblum, Attorney General
Kristen E. Boyd, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

           Attorneys for Respondent

1 - FINDINGS AND RECOMMENDATION

SULLIVAN, Magistrate Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his underlying state-court conviction for Sexual Abuse in the First Degree. For the reasons that follow, the Amended Petition for Writ of Habeas Corpus (#36) and Motion for Evidentiary Hearing (#69) should be denied.

<u>**BACKGROUND**</u>

On the night of January 16, 2005, petitioner met the victim, Khadijah Hall, at a local bar. Hall invited petitioner to come back to her house where she and a group of her friends continued to drink and play games. When the party concluded at 4:00 a.m., Hall advised petitioner that if he needed a place to stay, he could stay on the couch downstairs. Hall went upstairs to bed, but woke up to find petitioner touching her. Hall told petitioner to stop, but he put his hands around her neck to hold her down and sexually assaulted her. Hall's roommate ultimately heard the commotion and came to her aid. Respondent's Exhibit 130, pp. 19-28.

On February 4, 2005, petitioner was indicted on one count each of Rape in the First Degree, Unlawful Sexual Penetration in the First Degree, Sexual Abuse in the First Degree, Burglary in the First Degree, and Strangulation. Respondent's Exhibit 103. A jury found petitioner not guilty of Rape, Unlawful Sexual Penetration, and Burglary. Respondent's Exhibit 101. The jury hung on the Strangulation charge, and the court declared a mistrial as to that

2 - FINDINGS AND RECOMMENDATION

charge. *Id.* The jury found petitioner guilty of Sexual Abuse in the First Degree and the trial court sentenced him to 75 months in prison. *Id*.

Petitioner took a direct appeal, but later moved to voluntarily dismiss the appeal. The Oregon Court of Appeals granted petitioner's motion. Respondent's Exhibit 105.

Petitioner next filed for post-conviction relief ("PCR") in Marion County where the PCR trial court denied relief on all of his claims. Respondent's Exhibits 139-142. The Oregon Court of Appeals affirmed this decision without issuing a written opinion, and the Oregon Supreme Court denied review. *Duskin v. Belleque*, 236 Or. App. 665, 237 P.3d 898, *rev. denied,* 349 Or 479, 246 P.3d 744 (2010).

On July 26, 2011, petitioner filed his Amended Petition for Writ of Habeas Corpus in which he raises 16 grounds for relief.[1] Respondent asks the court to deny relief on the Amended Petition because: (1) some claims are not cognizable in a federal habeas corpus action; (2) petitioner failed to fairly present some claims

---

[1] To the extent petitioner argues additional claims in his briefing which are not contained within his Amended Petition, the court should not consider them. *See* Rule 2(c), Rules Governing Section 2254 Proceedings, 28 U.S.C. foll. § 2254 (requiring each habeas petition to "specify all the grounds for relief which are available to the petitioner"); *Greene v. Henry*, 302 F.3d 1067, 1070 fn 3 (9th Cir. 2002) (a court need not consider claims not raised in the petition).

3 - FINDINGS AND RECOMMENDATION

to Oregon's state courts, and those claims are now procedurally defaulted; and (3) the remainder of petitioner's claims lack merit.

**FINDINGS**

I.    **Failure to State Cognizable Claims**

In Grounds Nine, Ten, and Fifteen, petitioner takes issue with the state post-conviction review process in Oregon.  Specifically, he challenges: (1) the refusal of both the PCR trial court and the Oregon Court of Appeals to unseal jury questions from his criminal trial; and (2) the PCR trial court's failure to make more thorough findings.  Such matters lie within the discretion of the state courts and do not result in petitioner's continued incarceration. As a result, these claims do not state a cognizable claim for habeas corpus relief.  *See Ortiz v. Stewart*, 149 F.3d 923, 939 (9th Cir. 1998); *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989); *Lambert v. Blackwell*, 387 F.3d 210, 247 (3rd Cir. 2004).

In Ground Sixteen, petitioner purports to "incorporate[] all prior claims for relief" in an effort to allege cumulative error. Amended Petition (#36), p. 6.  This method of pleading is not allowed by Rule 2 of the Rules Governing Section 2254 Cases.  Even assuming petitioner could plead such a claim, petitioner cannot aggregate his claims in an attempt to prove a constitutional violation.  *Hayes v. Ayers,* 632 F.3d 500, 524 (9th Cir. 2011).

///

///

4 - FINDINGS AND RECOMMENDATION

## II.  **Exhaustion and Procedural Default**

### A.  **Standards**

A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. *Rose v. Lundy*, 455 U.S. 509, 519 (1982).  "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'"  *Casey v. Moore,* 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, (1986)).  If a habeas litigant failed to present his claims to the state courts in a procedural context in which the merits of the claims were actually considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim

unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Sawyer v. Whitley*, 505 U.S. 333, 337 (1992); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

**B.    Analysis**

In Ground Eight, petitioner raises a claim of trial court error, but as stated in the Background of this Findings and Recommendation, petitioner voluntarily dismissed his direct appeal where he should have presented any claims of trial court error. While petitioner attempted to raise his due process claim to the Oregon courts during his post-conviction review, the PCR trial court specifically found that petitioner's claims of trial court error were barred pursuant to *Palmer v. State of Oregon*, 318 Or. 352, 867 P.2d 1368 (1994).[2] Respondent's Exhibit 140, p. 13.  As a result, he failed to fairly present Ground 8 to Oregon's state courts.

In Grounds Eleven, Twelve, Thirteen, and Fourteen, petitioner raises several claims pertaining to an allegedly improper private communication between the bailiff and one or two jurors during their deliberations.   The record reveals that petitioner never

---

[2] In *Palmer*, the Oregon Supreme Court held that, subject to a few narrowly-drawn exceptions not applicable here, a petitioner may not raise a claim in a state post-conviction proceeding which he could have raised during direct review.

presented any of these claims to Oregon's state courts during either his direct or collateral review. As a result, he failed to fairly present these grounds to Oregon's state courts.

Based on the foregoing, petitioner failed to fairly present Grounds Eight, Eleven, Twelve, Thirteen, and Fourteen to the Oregon state courts. Because the time for presenting these claims in state court passed long ago, they are now procedurally defaulted. Petitioner has not argued cause and prejudice, nor has he attempted to make a colorable showing of actual innocence sufficient to excuse his default.

## III. **The Merits**

The court, having recommended dismissal of Grounds Eight through Sixteen for either failure to state a claim or due to procedural default, examines Grounds One through Seven on their merits.

### A.    **Standard of Review**

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner

bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413.  The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410.  The state court's application of clearly established law must be objectively unreasonable.  *Id* at 409.

B. **Analysis**

1. Counsel's Performance Regarding Jury Question (Ground One)

During its deliberations in petitioner's case, the jury sent out a question asking whether forcible compulsion was relevant to the charge of Sexual Abuse in the First Degree if the forcible compulsion occurred after the sexual contact between petitioner and the victim.  Respondent's Exhibit 135, p. 34.  Counsel did not ask

8 - FINDINGS AND RECOMMENDATION

for any clarification in response to the question, and the court simply instructed the jury to refer to its instructions. *Id.* Petitioner alleges that trial counsel was constitutionally ineffective when she failed to request a clarifying instruction for the jury in response to its question.

Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the court uses the general two-part test the Supreme Court has established to determine whether petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009). First, petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id* at 696. When *Strickland's* general standard is combined with the standard of

review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 129 S.Ct. at 1420.

The trial court instructed the jury with Uniform Criminal Instruction 1611: "Oregon law provides that a person commits the crime of Sexual Abuse in the First Degree when the person unlawfully and knowingly subjects another person to sexual contact, and the victim is subjected to forcible compulsion by the actor." Trial Transcript, p. 321. In her PCR deposition, counsel stated that the conjunctive language within the instruction "made it clear that the forcible compulsion was to be simultaneous with the sexual contact or was related to the sexual contact. I thought that [in] my mind the jury instruction would be helpful to us after hearing that question." Respondent's Exhibit 104, p. 35. She therefore did not ask for any additional clarification in response to the jury's question. The PCR trial court agreed with counsel's assessment:

> . . . counsel believed that the jury instruction made it clear that the forcible compulsion was to be simultaneous or related to the sexual act. Counsel's understanding was rooted in the conjunctive 'and'; reasoning that the placement of 'and' between the sections required that the "forcible compulsion" be compulsion to the sexual contact. Petitioner failed to meet his burden and demonstrate that counsel was unreasonable in her assessment that the jury instructions were proper, and the Court's response to the jury's question was appropriate. Petitioner

> failed to meet his burden and demonstrate that
> he was prejudiced by this instruction.

Respondent's Exhibit 140, pp. 10-11.

While petitioner believes that counsel should have asked for a specific clarification in direct response to the jury's question, the instruction the court issued plainly links the forcible compulsion to the sexual contact.  While counsel could have asked the court to clarify the issue for the jury by more directly addressing the jury's question, her performance did not fall below an objective standard of reasonableness when she did not do so. Even if it did, petitioner has not proven that he was prejudiced by any such failure.  As a result, the decision of the PCR trial court was neither contrary to, nor an unreasonable application of, clearly established federal law.

> 2.   <u>Counsel's Decision Not to Request Jury Instruction</u>
>      <u>on "Sexual Contact" (Ground Two)</u>

Petitioner next faults counsel for failing to ensure that the jury was instructed on the definition of "sexual contact" as an essential element of his only crime of conviction, Sexual Abuse in the First Degree.  The PCR trial court rejected this claim:

> Petitioner is correct that the jury was not
> advised of the definition of sexual contact.
> This case, however, was not an instance where
> there was a question of whether any sexual
> contact occurred.   Instead, there was no
> dispute that there was sexual contact.   As
> noted, the defense theory was premised, not on
> the idea that it wasn't petitioner or that he
> didn't have sexual contact with the victim;
> instead the premise of the defense was that

11 - FINDINGS AND RECOMMENDATION

the sexual contact was consensual. The
contact at issue in the charge of Sexual
Assault in the First Degree, as set forth in
the Indictment, was that petitioner "did
unlawfully and knowingly subject [the victim]
*to sexual contact by touching her breast(s)*,
an intimate part of said victim, *by means of
forcible compulsion*." There was no testimony
or defense presented that there was
inadvertent contact with the victim's breast
that was not of a sexual nature. The only
issue was whether the contact with the
victim's breast was consensual or not. The
victim testified that contact with her breast
was not consensual. The definition of sexual
contact would not have aided the jury in this
determination in any manner.

Respondent's Exhibit 140, p. 11 (italics in original).

Because petitioner's defense was that he engaged in consensual
sexual activity with the victim, there was no dispute at trial that
he had sexual contact with the victim. As such, counsel's
performance did not fall below an objective standard of
reasonableness when she did not request a jury instruction on the
definition of "sexual contact," and petitioner is not entitled to
habeas corpus relief on this claim.

      3.   <u>Counsel's Handling of Jury Question Discussion
(Grounds Three & Four)</u>

The jury in petitioner's case presented the trial court with
questions during deliberations. In response, the trial judge held
a chambers conference with the attorneys. Petitioner's attorney
did not immediately inform him of the conference, nor did she make
any attempt to have him present at the conference. No official

record was made of these proceedings.[3] Petitioner believes counsel should have objected to his exclusion from the chambers conference and ensured that the conference was conducted on the record. Instead, these questions were sealed and petitioner claims to have never seen the contents of these questions.[4]

The PCR trial court found as follows:

> In this instance, the Court, and counsel, complied with the requirements of ORCP 59D. Counsel was contacted and the jury questions were provided to the prosecution and defense. The Court then instructed the jurors to refer to their jury instructions. After being informed of the jury's question, counsel believed this was the appropriate response. There was no basis for counsel to object to the Court's procedure or answer. The rule does not require that petitioner be present, rather that the parties *or* their counsel are required to receive notice. The Court complied with the rule as counsel was notified and participated in the discussion regarding the jury question.

Respondent's Exhibit 140, p. 11 (italics in original).

Because there was no requirement that petitioner be present at the chambers conference where his attorney was available to attend the conference, counsel's performance did not fall below an objective standard of reasonableness when she did not include her client in that conference.

---

[3] Petitioner's attorney did, however, take notes at the conference. Respondent's Exhibit 124.

[4] This habeas court unsealed the jury questions and answers, found in Respondent's Exhibit 155, during the pendency of this action in its Order (#39) dated July 29, 2011.

13 - FINDINGS AND RECOMMENDATION

The PCR trial court did not specifically make findings regarding petitioner's claim that counsel should have ensured that the chambers conference was conducted on the record. In the absence of a reasoned opinion on this issue, the court conducts an independent review of the record. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

Petitioner's attorney did take notes at the conference, but did not ensure that the gathering was conducted on the record. Respondent's Exhibit 124. There was no reason to make a formal record of the conference in the absence of any dispute between the parties, something which petitioner has not alleged. The result of the conference was to simply ask the jury to consult its instructions again. Petitioner has not shown any need to conduct the brief conference on the record, nor has he established how he was prejudiced by any failure of counsel to ensure that the conference was conducted on the record. Consequently, the PCR trial court's decision denying relief on this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

### 4.    Impeachment of the Victim (Ground Five)

Petitioner next argues that his trial attorney was constitutionally ineffective when she failed to offer evidence of the victim's prior perjured testimony from an unrelated custody battle. Trial counsel stated in her PCR deposition that she did

not use the victim's prior statements because she believed they were inadmissible under the Oregon Evidence Code. Respondent's Exhibit 134, p. 44. The PCR trial court agreed, finding that "OEC 608(2) specifically precludes [admission of the evidence at issue.] Counsel stated that it was her professional opinion that this evidence would not be admissible as it was a collateral matter subject to OEC 608. Counsel is correct." Respondent's Exhibit 140, p. 12.

The PCR trial court's interpretation of the Oregon Evidence Code is a state-court interpretation of state law which is binding upon this court. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Peltier v. Wright*, 15 F.3d 860, 862 (9th Cir. 1994) ("state courts are the ultimate expositors of state law."). Because the evidence at issue was inadmissible, counsel properly declined to offer it, and the PCR trial court properly rejected this claim.

5.   Counsel's Failure to Call Potential Witnesses
     (Grounds Six and Seven)

Finally, petitioner alleges that trial counsel was ineffective for failing to call Robert Purdy and Jason Roth as witnesses for his defense. According to petitioner, Purdy would have presented testimony that the victim enjoyed sexual asphyxiation, a fact he believes would have proved that his sexual contact with the victim

(where he placed his hands around her neck) was consensual. Petitioner also claims that Roth would have testified that he saw the victim kissing petitioner throughout the night in direct contradiction to her trial testimony that she never kissed him and never had any type of romantic interest in him. The PCR trial court made extensive findings regarding these claims:

1.  Petitioner asserted that counsel was constitutionally ineffective in failing to call Robert Jim Purdy as a defense witness. Specifically, petitioner stated that Purdy's testimony could have provided evidence of the victim's past sexual behavior with Purdy, to include asphyxiation, which would have proven that the sexual conduct between the victim and petitioner was consensual.

2.  The investigator assigned to petitioner's case explored the idea of presenting testimony from Purdy. The investigator contacted Purdy's domestic relations attorney and provided defense counsel a report of that conversation. This contact was done at defense counsel's request. As a result, the investigator attempted to contact Purdy to discuss his potential testimony.

3.  Counsel stated that as a result of the investigation, she was advised that Purdy was unwilling to talk with the defense about the victim because of the custody matter between Purdy and the victim. Accordingly, it was counsel's understanding that Purdy would not be willing to provide any information in support of the defense because he did not want his testimony to reflect on the civil case. Counsel asserted that based upon the representation of Purdy's unwillingness to testify, she made a strategic decision not to call him as a

witness.   Counsel's decision in this regard is a reasonable decision and counsel is credible on this matter.

4.   Further, even if Purdy was willing to testify to his sexual practices with the victim, his testimony would not have been admissible evidence under OEC 404 or OEC 412.   Admission of this type of information under OEC 412(2)(A-C), must be necessary to rebut or explain scientific or medical evidence offered by the state, or is otherwise constitutionally required to be admitted. Petitioner sought to introduce this evidence in order to demonstrate that the victim purportedly engaged in consensual sexual activity that included asphyxiation with Purdy and therefore that she likely engaged in consensual sexual activity that included asphyxiation with petitioner. Introduction of evidence for this purpose is improper as evidence of a victim's collateral sexual activity [and] is not admissible to show consent to the sexual activity that is the subject of an alleged crime.   Thus, had Purdy been willing and able to testify, the type of statement to be offered regarding the victim's past sexual practices would not have been admissible.

5.   Petitioner was not prejudiced by counsel's decision not to call Purdy as a witness.

6.   Petitioner claimed that trial counsel was ineffective for failing to present the testimony of Jason Roth.   Petitioner stated Roth could have testified that petitioner and the victim were kissing one another back and forth while at the victim's house in support of his defense of consent.   Counsel, through her investigator, contacted Roth.   Counsel stated she was aware of Roth's statement regarding kissing, however, based upon

counsel's understanding of the statements Roth gave to the investigator, she determined that Roth's testimony would have been "more hurtful than the helpful nature of that one statement."

7.    In support of this strategic decision, counsel stated that she was concerned about the nature of Roth's testimony; namely, that he was a friend of and sympathetic to the victim, that he believed her not to be sexually aggressive, and that whenever the victim showed attention to other guys that night petitioner would act jealous[ly]. Counsel believed that this type of testimony, particularly regarding petitioner's jealousy, was harmful and she made a strategic decision not to call him. Petitioner failed to meet his burden and demonstrate that counsel's decision was unreasonable. Counsel made an informed decision regarding whether to present Roth as a witness. This was a reasonable strategic decision and counsel is credible on this point.

Respondent's Exhibit 140, pp. 6-8.

It is clear from the foregoing that petitioner's attorney considered calling both Purdy and Roth, but decided that the risks outweighed the perceived benefits. This is the kind of strategic decision to which courts afford a high level of deference. *Strickland*, 466 U.S. at 689. In addition, the testimony petitioner wanted counsel to elicit from Purdy was not admissible under Oregon law. The PCR trial court's decision is thorough and well-reasoned, and is neither contrary to, nor an unreasonable application of, clearly established federal law.

///

18 - FINDINGS AND RECOMMENDATION

IV.  **Motion for Evidentiary Hearing (#69)**

Finally, petitioner moves for an evidentiary hearing in order to establish additional facts that he did not develop during his underlying state court proceedings.  It appears petitioner asks this court to make certain factual findings, based upon evidence previously presented, that the PCR trial court did not.  This is not a proper purpose for an evidentiary hearing, which is designed to allow a petitioner to introduce evidence not previously offered (if appropriate) in order to support his claims.

To the extent petitioner asks to develop evidence in an evidentiary hearing to bolster his claims, he is not entitled to such a hearing.  Because the Oregon state courts adjudicated petitioners claims on their merits, habeas corpus review of those claims is conducted pursuant to 28 U.S.C. § 2254(d)(1).  "Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).  "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review.  If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id* at 1400.  For these reasons, petitioner's Motion for Evidentiary Hearing (#69) should be denied.

///

## RECOMMENDATIONS

For the reasons identified above, petitioner's Motion for Evidentiary Hearing (#69) should be DENIED.  The Amended Petition for Writ of Habeas Corpus (#36) should be also be DENIED and a judgment should be entered dismissing this case with prejudice. The court should decline to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

## SCHEDULING ORDER

This Findings and Recommendation will be referred to a district judge.  Objections, if any, are due within 14 days.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this  28th  day of February, 2013.


        /s/ PATRICIA SULLIVAN
        Patricia Sullivan
        United States Magistrate Judge

20 - FINDINGS AND RECOMMENDATION